1

2

3

4

5            UNITED STATES DISTRICT COURT

6            EASTERN DISTRICT OF WASHINGTON

7    ERIK KESSACK, a single man,
                                              NO. 2:19-CV-0423-TOR
8                        Plaintiff,
                                              ORDER GRANTING IN PART
9         v.                                  DEFENDANTS' MOTION FOR
                                              SUMMARY JUDGMENT, DENYING
10   WASHINGTON DEPARTMENT OF                 AS MOOT DEFENDANTS' MOTION
     CORRECTIONS, a subsidiary of the         TO STRIKE, AND GRANTING
11   State of Washington, STATE OF            DEFENDANTS' MOTION TO
     WASHINGTON, and COMMUNITY                EXPEDITE
12   CORRECTIONS OFFICER
     JUSTINE ROMANO,
13
                         Defendants.
14

15        BEFORE THE COURT are Defendants' Motion for Summary Judgment

16   (ECF No. 17), Defendants' Motion to Strike Declaration of Walter Kautzky (ECF

17   No. 35), and Defendants' Motion to Expedite Hearing on Motion to Strike (ECF

18   No. 37).  These matters were submitted for consideration with oral argument on

19   June 30, 2021.  Andrew S. Biviano appeared on behalf of Plaintiff.  Katie L.

20   Merrill and Carl P. Warring appeared on behalf of Defendants.  The Court has

reviewed the record and files herein, and is fully informed. For the reasons

discussed below, Defendants' Motion for Summary Judgment (ECF No. 17) is

**GRANTED in part**, Defendants' Motion to Strike Declaration of Walter Kautzky

(ECF No. 35) is **DENIED as moot**, and Defendants' Motion to Expedite Hearing

on Motion to Strike (ECF No. 37) is **GRANTED**.

## BACKGROUND

This case concerns the revocation of an individual from Washington's Drug

Offender Sentencing Alternative ("DOSA") program. ECF No. 1-1. Defendants

seek summary judgment on all of Plaintiff's causes of action, as outlined below.

The parties timely filed their respective response and reply. ECF Nos. 23, 31.

Defendants also move to expedite a motion to strike an expert report from

Plaintiff's response. ECF Nos. 35, 37. The parties timely filed their respective

response and reply to the motion to strike. ECF Nos. 38, 42. Except where noted,

the following facts are not in dispute.

On February 3, 2016, Plaintiff Erik Kessack was convicted of Burglary in

the Second Degree, Theft in the Second Degree, and Forgery. ECF No. 18 at 1-2,

¶ 1. Plaintiff was sentenced under DOSA, with the term of his sentence to be

served half in total confinement and half in community custody. ECF No. 18 at 2,

¶ 2. The sentence included 29.75 months for burglary and 12.75 months for each

theft and forgery in total confinement, with the same number of months in community custody.  ECF No. 18 at 2, ¶ 3.

In late March 2017, Plaintiff was transferred from total confinement to community custody at the Brownstone Work Release facility ("Brownstone") pursuant to Plaintiff's DOSA sentence.  ECF No. 18 at 2-3, ¶¶ 5, 7.  During his work release, Plaintiff was supervised by Community Corrections Officer ("CCO") Justine Romano (hereinafter referred to as CCO Webb)[1] whose job responsibilities included fulfilling statutory duties of supervision and ensuring compliance with conditions of release.  ECF No. 18 at 2-3, ¶ 6.

While at Brownstone, Plaintiff was under specific conditions and rules pursuant to his work release and DOSA sentence.  Plaintiff's DOSA conditions included participation in a substance abuse treatment program and drug screenings where "[a]n offender who fails to complete the special drug offender sentencing alternative or who is administratively terminated from the program shall be reclassified to serve the unexpired term of the sentence as ordered by the sentencing judge."  ECF No. 18 at 2, ¶ 4.  Plaintiff disputes the quoted language to clarify "that [Plaintiff] finished the requirements of his DOSA prior to the back-

---

[1]    Defendant CCO Webb changed her name since the initiation of this lawsuit. ECF No. 17 at 3.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING AS MOOT DEFENDANTS' MOTION TO STRIKE, AND GRANTING DEFENDANTS' MOTION TO EXPEDITE ~ 3

dated administrative termination and was found not guilty for failing to complete it." ECF No. 24 at 2, ¶ 4. Additionally, Plaintiff signed and agreed to abide by Brownstone's Resident Orientation Handbook, making Plaintiff subject to the conditions it contained. ECF No. 18 at 3, ¶ 8. The handbook's conditions included prohibitions on contact with residents in other work release facilities and prohibitions on entry into certain geographical areas, including Riverfront Park in downtown Spokane, Washington. ECF No. 18 at 3, ¶ 9. Plaintiff knew that he was not supposed to go to Riverfront Park as a condition of the handbook. ECF No. 18 at 3, ¶ 10. Plaintiff was notified by letter if he failed to complete treatment as required, or if he was administratively terminated, he would be returned to total confinement to serve the remainder of his sentence. ECF No. 18 at 3, ¶ 11. Plaintiff engaged in substance abuse treatment with a counselor at Brownstone. ECF No. 18 at 3, ¶ 12. Plaintiff also signed his DOSA plan with his treatment provider Lori Krahn, where he was again notified that if he failed to complete his treatment program, or was administratively terminated, he would be reclassified to serve the remainder of his sentence. ECF No. 18 at 4, ¶ 13. Plaintiff was also notified that he could be administratively terminated from the program for behavioral issues, unsuccessful responses to interventions, lack of progression towards the goals of a treatment plan, any major infraction that causes a change in custody level, or a violation of conditions of release. ECF No. 18 at 4, ¶ 14.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING AS MOOT DEFENDANTS' MOTION TO STRIKE, AND GRANTING DEFENDANTS' MOTION TO EXPEDITE ~ 4

Finally, the handbook had the following policy regarding attendance to religious services: "If you are wishing to locate a religious service in the community, you may initially submit a point to point pass to attend that church … if you decide on a church you will contact the religious leader at that location and make arrangements to attend services and provide that information to your CCO on an Offender schedule plan.  Your CCO will verify the information with the religious leader and inform them of the work release rules for attending services in the community."  ECF No. 18 at 4, ¶ 15.

After beginning work release, Plaintiff requested to attend Christ Hope Bible Church.  ECF No. 18 at 4, ¶ 16.  Per the handbook policy, Plaintiff submitted point to point requests for the church but provided contact for a person who was not an employee of the church, and the information was unable to be verified.  ECF No. 18 at 5, ¶ 17.  Plaintiff submitted a second point to point pass but CCO Webb had difficulty verifying the information as her attempts to contact the church went unanswered.  ECF No. 18 at 5, ¶ 18.

On April 19, 2017, Plaintiff filed a grievance, requesting approval of his point to point passes for church.  ECF No. 18 at 5, ¶ 19.  CCO Webb and the Community Corrections Supervisor ("CCS") Laura Jense met to discuss the grievance, after which CCS Jense provided Plaintiff approval for a point to point pass to the church so he could attend and obtain the information of a church

employee. ECF No. 18 at 5, ¶ 19. Plaintiff was initially given 1 hour and 15 minutes until CCO Webb was able to speak with church employee Stacy Smith. ECF No. 18 at 5, ¶ 20. Plaintiff was required to bring back a signed church pamphlet as proof of attendance. ECF No. 18 at 5, ¶ 21. Once the information was verified, Plaintiff was given 2 hours for his point to point pass for church attendance. ECF No. 18 at 5, ¶ 22. Plaintiff disputed the 2-hour time allotment and made complaints about it to other CCOs. ECF No. 18 at 5, ¶ 23. It was determined that based on predicated travel times, Plaintiff was provided sufficient time to attend church with his 2-hour pass. ECF No. 18 at 6, ¶ 24.

Following approval to attend church, Plaintiff met Vanessa Orr on the bus while traveling to work. ECF No. 18 at 6, ¶ 25. Ms. Orr was an offender housed at the Eleanor Chase Work Release facility. ECF No. 18 at 6, ¶ 26. Ms. Orr requested a pass to attend the same church Plaintiff attended the week prior to May 21, 2017. ECF No. 18 at 6, ¶ 27. Plaintiff agrees but asserts that Ms. Orr planned to meet Plaintiff without his knowledge or participation. ECF No. 24 at 3, ¶ 27.

On May 21, 2017, Plaintiff was observed by an Eleanor Chase Work Release CCO in Riverfront Park walking hand in hand with Ms. Orr. ECF No. 18 at 6, ¶ 28. Plaintiff and Ms. Orr had met at the church and decided to grab pamphlets and walk around. ECF No. 18 at 6, ¶ 29. Plaintiff asserts that Ms. Orr surprised Plaintiff at the church service. ECF No. 24 at 3, ¶ 29. They agreed to

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING AS MOOT DEFENDANTS' MOTION TO STRIKE, AND GRANTING DEFENDANTS' MOTION TO EXPEDITE ~ 6

leave the church; Plaintiff asserts this was consistent with their passes to travel back to work release. ECF No. 18 at 6, ¶ 30; ECF No. 24 at 3, ¶ 30. While Defendants assert that both Plaintiff and Ms. Orr were under restriction not to go to Riverfront Park and knew they entered into the Park, Plaintiff asserts that he did not know he was entering the Park or that where he was walking was prohibited. ECF No. 24 at 4, ¶ 31. A restriction on point to point passes include: "Residents may not deviate from your approved pass, travel with other residents, or meet up with anyone including … residents from other facilities." ECF. No. 18 at 6, ¶ 32. Plaintiff and Ms. Orr were not allowed to be together as residents from separate work release facilities as male and female residents are kept separate. ECF No. 18 at 7, ¶ 33. Plaintiff disputes this to the extent that he argues that Plaintiff was not precluded from traveling together with other residents to authorized locations based on permission from CCO Anderson and that he was not precluded from attending church services where other residents attended based on his First Amendment right to the free exercise of religion. ECF No. 24 at 4, ¶ 33.

Upon Ms. Orr's return to her work release facility, she was asked by her supervisor to write a statement about what had occurred. ECF No. 18 at 7, ¶ 34. Where Ms. Orr was not on a DOSA sentence and not on any mandatory therapy or treatment as part of her sentence, Ms. Orr received an infraction, had a hearing, and was sanctioned regarding her presence in the Park with Plaintiff. ECF No. 18

at 7, ¶ 35; ECF No. 24 at 11, ¶ 3.  Plaintiff appears to agree and clarify that "Ms. Orr was not removed from her facility, returned to prison prior to any determination of an infraction violation or DOSA cancellation even though she initiated the contact with Plaintiff without his prior knowledge and committed the same offense he did."  ECF No. 24 at 4, ¶ 35.  Plaintiff further clarifies that Ms. Orr was put on total confinement to her room for a few days, and visiting privileges to her grandmother were revoked, and her work release time was extended by a few weeks.  ECF No. 24 at 4, ¶ 35.  While Plaintiff draws comparison between Plaintiff and Ms. Orr's sanctions, Defendants assert that they are not comparable offenders: Ms. Orr was a first-time offender with no prior infractions and not subject to special sentencing conditions whereas Plaintiff was a multi-time felon who had previously been in work release, committed similar infraction, and had a classification as high violent.  ECF No. 24 at 11, ¶ 3; ECF No. 32 at 2, ¶ 3.

CCO Mans notified CCO Webb that Plaintiff was in Riverfront Park with Ms. Orr and that Ms. Orr had confirmed Plaintiff's identity in her written statement.  ECF No. 18 at 7, ¶ 36.  Unaccounted time in the community and being with an unauthorized person are major infractions under Washington Administrative Code § 137-25-030, 813 and 814 respectively, and recognized in DOC policy 460.135.  ECF No. 18 at 7, ¶ 37.  Plaintiff admitted to the 813

infraction for being in an unauthorized location. ECF No. 18 at 7, ¶ 38. In accordance with policy, CCO Webb reported the major infraction behavior to her supervisor, CCS Jense and other available CCOs. ECF No. 18 at 7, ¶ 39. CCO Webb reported the basis for the 813 and 814 infractions – being in an unauthorized location with an unauthorized person – along with Ms. Orr's written statement, observation of Plaintiff by CCO Mans, Plaintiff's classification of high violent, and a previous 813 infraction from previous time in work release. ECF No. 18 at 8, ¶ 40. Plaintiff asserts that CCO Webb listed Plaintiff's earlier requests for more travel time "as grounds for additional punishment" in the infraction report. ECF No. 24 at 11, ¶ 4. Defendants clarified that CCO Webb wrote: "It should be noted that [Plaintiff] attempted to get a travel time extension on religious pass on two different occasions and was denied both times after it was explained that he was being given adequate amount of time to get to and from his destination." ECF No. 32 at 2-3, ¶ 4.

Pursuant to DOC policy, only the CCS can authorize a return to total confinement. ECF No. 18 at 8, ¶ 42. CCO Webb recommended to her supervisor that Plaintiff be returned to prison prior to determination of guilt, which her supervisor approved. ECF No. 24 at 11, ¶ 5. Defendants dispute this insofar as that it implies that Plaintiff was entitled to a hearing prior to returning to prison or that a finding of guilt or imposition of a sanction was necessary for his return to

prison pending his serious infraction hearing.  ECF No. 32 at 3, ¶ 5.  CCO Webb only made a recommendation on whether or not to return Plaintiff to total confinement to her supervisor CCS Jense based on his infraction behavior.  ECF No. 18 at 8, ¶ 41.  Plaintiff agrees but clarifies "that but for CCO Webb's recommendation to remove [Plaintiff] from work release, he would not have been sent back to prison and had his DOSA wrongfully revoked.  CCO Webb's recommendations on custody transfers and sanctions had great weight because she doesn't ever recall having her recommendation not followed."  ECF No. 24 at 5, ¶ 41; ECF No. 24 at 11, ¶ 6.  Defendants dispute Plaintiff's characterization in that there is no evidence that CCO Webb's recommendations were always followed or what weight a CCS gives them.  ECF No. 32 at 4, ¶ 6.

While Plaintiff was transported to Airway Height Correctional Center for total confinement, Plaintiff alleges that CCO Webb said she had "been looking for a reason to send him back to prison because he had filed a grievance against her and that he was stupid for even asking for an extension of time."  ECF No. 24 at 11, ¶ 7.  Defendants agree that Plaintiff only made this statement during his deposition, but that he had never raised this assertion at any prior hearings on the matter.  ECF No. 32 at 4, ¶ 7.  Defendants assert that a return to total confinement pending an investigation is not considered a sanction, but a change in custody classification that is permitted by Washington Administrative Code § 137-56-170.

ECF No. 18 at 8, ¶ 43.  Plaintiff disputes that this authority permits total confinement pending an investigation; rather, the cited provision permits suspension in a work/release plan and the placement of an offender in custody "pending a disciplinary hearing."  ECF No. 24 at 5, ¶ 43.  Plaintiff further asserts that the WAC provision does not allow total confinement pending an investigation and that "no legal provision allows Defendants to impose it in retaliation for complaints and grievances filed by offender against DOC personnel."  ECF No. 24 at 5, ¶ 43.

Following CCO Webb's reports, Plaintiff received infraction 813 for being in an unauthorized location and infraction 814 for associating with an authorized person based on his presence in Riverfront Park with Ms. Orr.  ECF No. 18 at 8, ¶ 44.  Plaintiff admitted to the 813 infraction but denied the 814 infraction on the basis that he was permitted to be with other residents.  ECF No. 18 at 8, ¶¶ 45-46.  During this process, CCO Webb's role was to present evidence and a recommendation for a potential sanction.  ECF No. 18 at 9, ¶ 47.  The hearing officer weighs the CCO's evidence, the evidence of the offender, and then renders a decision.  ECF No. 18 at 9, ¶ 48.

Following the hearing, Plaintiff was found guilty on both the 813 and 814 infractions.  ECF No. 18 at 9, ¶ 48.  CCO Webb understood that if Plaintiff were found not guilty, he could have returned to work release, continued his treatment

program, and kept his DOSA sentence.  ECF No. 18 at 9, ¶ 50.  Plaintiff disputes

that CCO's Webb's "understanding" is not supported by the record and that the

justification for confinement is "wholly unjustified."  ECF No. 24 at 6-7, ¶ 50.

Plaintiff appealed only the guilty finding on the 814 infraction, arguing that

he had not planned to meet up with Ms. Orr.  ECF No. 18 at 9, ¶ 51.  The Appeals

Panel upheld the finding of guilty on the 813 and 814 infractions.  ECF No. 18 at

9, ¶ 52.

Plaintiff was administratively terminated from his treatment program.  ECF

No. 18 at 10, ¶ 53.  Plaintiff argues that this assertion is misleading since a form

was backdated at the request of CCO Webb "even though [Plaintiff] had already

completed all his agreed requirements for that provider in anticipation of his

release into the community in another city."  ECF No. 24 at 7-8, ¶ 53.

Once CCO Webb received discharge paperwork, she was mandated by

policy to report Plaintiff for a 762 violation for administrative termination from

treatment.  ECF No. 18 at 9, ¶ 54.  Plaintiff disputes this to the extent that the

administrative termination was caused by CCO Webb even though he "only

received a modest loss of time as a sanction for walking through Riverfront Park."

ECF No. 24 at 8, ¶ 54.  While Defendants assert that CCO Webb did not know that

the decision to transfer Plaintiff to total confinement would result in administrative

discharge from treatment, Plaintiff asserts that CCO Webb's actions occurred with

the express purpose of terminating Plaintiff's DOSA sentence. ECF No. 18 at 10, ¶ 55; ECF No. 24 at 8, ¶ 55. Plaintiff agrees that CCO Webb was mandated to report his discharge from treatment and acted within DOC policy but asserts she violated her duty by soliciting a backdated notice of termination after he completed his DOSA required treatment. ECF No. 18 at 10, ¶ 57; ECF No. 24 at 8, ¶ 57.

On July 17, 2017, Plaintiff was found guilty of the 762 infraction and his DOSA sentence was revoked. ECF No. 18 at 10, ¶ 59. Plaintiff appealed this decision and was granted a new hearing based on an error in service of his hearing paperwork. ECF No. 18 at 10, ¶ 60. Plaintiff's second hearing was continued after he requested a new hearings officer. ECF No. 18 at 11, ¶ 61.

On August 28, 2017, Plaintiff was again found guilty of the 762 infraction and his DOSA was revoked. ECF No. 18 at 11, ¶ 62. Plaintiff appealed this decision, but on September 22, 2017, the Appeals Panel upheld the decision. ECF No. 18 at 11, ¶ 63. The Appeals Panel determined the preponderance of the evidence standard was used, and that the DOSA revocation was proper. ECF No. 18 at 11, ¶ 64.

On July 26, 2018, the Washington Supreme Court issued a decision, *In Re: Schley*, after which DOC began reviewing policies and providing new hearings to all previous DOSA revocations still in custody. ECF No. 18 at 11, ¶ 65. Plaintiff agrees but asserts that the decision affirmed an intermediate appellate decision and

its' rule that a preponderance of the evidence standard must be used in DOSA

revocations, a rule in place at the time Plaintiff had his DOSA revoked. ECF No.

24 at 10, ¶ 65. Following this DOC policy, Plaintiff's August 28, 2017 hearing

was remanded for a new hearing. ECF No. 18 at 11, ¶ 66.

On December 20, 2018, Plaintiff was found not guilty on the basis that his

violation was not treatment related, pursuant to new DOC policy, and ordered

released from custody. ECF No. 18 at 12, ¶ 67; ECF No. 32 at 10, ¶ 24.

## DISCUSSION

### A. Summary Judgment Standard

The Court may grant summary judgment in favor of a moving party who

demonstrates "that there is no genuine dispute as to any material fact and that the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling

on a motion for summary judgment, the court must only consider admissible

evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

The party moving for summary judgment bears the initial burden of showing the

absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). The burden then shifts to the non-moving party to identify

specific facts showing there is a genuine issue of material fact. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla

of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id*. at 248. Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id*. The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## B.  Section 1983 Claims

Defendants move for summary judgment on Plaintiff's § 1983 claims on the grounds that (1) probable cause provides a complete defense to the actions for malicious prosecution and false imprisonment under the Fourth and Fourteenth Amendments and (2) Plaintiff lacks competent evidence to support the elements for malicious prosecution, false imprisonment, and retaliation under the First Amendment. ECF No. 17 at 10-15. Plaintiff asserts (1) Defendants lacked probable cause to revoke his DOSA sentence, (2) collateral estoppel establishes

Defendants lacked probable cause, and (3) Plaintiff brings viable federal claims. ECF No. 23 at 6-16.

"A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of his 'rights, privileges, or immunities secured by the Constitution and [federal] laws' by a person, or entity, including a municipality, acting under the color of state law." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-95 (1978)). Plaintiff's § 1983 claims raise several issues. The Court will address each in turn.

### 1. Defendant CCO Webb

As an initial matter, Plaintiff concedes that the § 1983 claims can only be maintained against CCO Webb individually. [2] ECF No. 23 at 6. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). However, Defendants assert that CCO Webb was not personally responsible for the decision to return Plaintiff to prison or for the decision to

---

[2] Plaintiff also asserts the § 1983 claims can be maintained against Defendant DOC Employees John/Jane Does. ECF No. 23 at 6. However, the Court dismissed these Defendants following Plaintiff's failure to identify DOC John and Jane Doe Employees by April 17, 2020. ECF No. 12.

revoke his DOSA sentence.  ECF No. 17 at 20.  Plaintiff asserts that CCO Webb was critically involved in the acts that resulted in his incarceration and revocation of DOSA.  ECF No. 23 at 19-20.

To succeed on a § 1983 claim, a plaintiff must show a violation of a federal right that was proximately caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).  To establish causation, a plaintiff must demonstrate that a defendant made an affirmative act, participated in another's affirmative act, or omitted to perform an act he was legally required to do that caused the deprivation complained of.  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

Here, Plaintiff's complained of injury is his incarceration following his suspected 813 and 814 infractions and the subsequent revocation of his DOSA sentence where he remained incarcerated following a guilty finding on his 762 infraction.  ECF No. 1-1.  The Court notes that there are several relevant individuals that are not named defendants, including CCO Webb's supervisor CCS Jense who made the decision to return Plaintiff to prison, the DOC hearings officers who found Plaintiff guilty of his 813, 814, and 762 infractions, and the treatment counselor who was mandated to report Plaintiff for a 762 infraction.  ECF No. 18 at 8-9, ¶¶ 41-42, 48-49, 53.  However, Plaintiff only asserts that CCO Webb personally participated in his injury, including by reporting his infraction,

recommending his return to prison, and participating as a witness at his infraction hearings.  ECF No. 23 at 20.

Viewing the facts in light most favorable to Plaintiff, the Court finds that CCO Webb was personally involved in Plaintiff's alleged injuries on the grounds that her job responsibilities include mandatory reports and recommendations in an offender's disciplinary proceedings.  Therefore, Plaintiff has established the causation element.

*1.  Heck Bar*

Defendants contend that none of the proceedings terminated in favor of Plaintiffs as required by *Heck* where the "change in finding on the 762 infraction … was the result of a voluntary remand by DOC hearings officers after the *In Re Schley* decision."  ECF No. 17 at 13.

A civil rights claim "is not cognizable under § 1983" if the plaintiff's success would "render a conviction or sentence invalid."  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  A plaintiff must show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Id.* at 487.  Recently, the Ninth Circuit held that a plaintiffs' convictions were "declared invalid by a state tribunal authorized to make such determination" when the Alaska Superior Court

vacated their convictions based on a settlement agreement. *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1203 (9th Cir. 2020). The court concluded there was no outstanding criminal judgment, there were no charges pending against the plaintiffs, and the plaintiffs did not stand convicted of anything. *Id.* at 1204.

Here, the Court finds the *Roberts* opinion instructive. The 762 infraction resulted in Plaintiff's DOSA revocation. ECF No. 17 at 7. It is undisputed that the December 20, 2018 Hearing Officer found Plaintiff not guilty on the 762 infraction on the grounds that he was not terminated from treatment for clinical reasons. ECF No. 18 at 12, ¶ 67; ECF No. 32 at 10, ¶ 24. This not guilty finding resulting in Plaintiff's release from prison is a favorable termination contemplated by *Heck* in that there are no outstanding criminal judgments, no further charges pending against Plaintiff, and Plaintiff no longer stands convicted of the 762 infraction. *See Roberts*, 947 F.3d at 1202-1204. Therefore, *Heck* does not provide a bar to Plaintiff's § 1983 claims. However, as discussed *infra*, summary judgment is nonetheless appropriate on Plaintiff's § 1983 claims.

1. *Probable Cause: Malicious Prosecution and False Imprisonment*

As demonstrated at oral argument and in briefing, the parties agree that probable cause existed to find Plaintiff guilty of the 813 and 814 infractions for walking in an unauthorized area with an unauthorized person. ECF No. 17 at 11-12; ECF No. 23 at 7. Plaintiff asserts a lack of probable cause for the 762

infraction, arguing that the 813 and 814 infractions were not the basis for revoking Plaintiff's DOSA. ECF No. 23 at 6-8.

A finding of probable cause is a complete defense to federal and state law claims of malicious prosecution and false imprisonment. *See Echante v. Cty. of Mono*, 299 F. App'x. 732, 733-34 (9th Cir. 2008) (bar to federal claims); *Bennett v. Gow*, 345 F. App'x. 286, 287 (9th Cir. 2009) (bar to Washington State claims). "Probable cause exists when police officers have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Wallace*, 213 F.3d 1216, 1220 (9th Cir. 2000) (internal quotation omitted).

A person is guilty of a 762 infraction for noncompliance with the DOSA program for failing to complete DOSA or administrative termination from the DOSA program. ECF No. 17 at 7; ECF No. 18 at 10, ¶ 56; *see also* WAC 137-25-030. Plaintiff was incarcerated pending the 813 and 814 infractions, the incarceration which rendered him noncompliant with successful completion of the DOSA program. ECF No. 23 at 3. It is undisputed that CCO Webb had the authority to recommend placing Plaintiff "in custody" pending the disciplinary hearing for the 813 and 814 infractions. *See* WAC 137-56-170(1). It is further undisputed that CCO Webb was mandated to report Plaintiff's termination from treatment after he became noncompliant with DOSA due to his incarceration. ECF

No. 18 at 9-10, ¶¶ 54, 57; ECF No. 32 at 8-9, ¶ 20. Plaintiff's unavailability to complete treatment triggered administrative termination from the DOSA program. ECF No. 18 at 9, ¶ 54; ECF No. 18 at 10, ¶ 56. Where Plaintiff was unavailable for treatment due to his incarceration, the hearing officer had probable cause to find him guilty of a 762 infraction.

First, Plaintiff disputes probable cause on the 762 infraction on the grounds that he had already completed treatment. ECF No. 24 at 7-8, ¶ 53, 15, ¶ 18. While it is undisputed that Plaintiff finished the treatment classes available to him at Brownstone, he had yet to complete the program and be discharged. *See* ECF No. 34 (audio hearing dated August 28, 2017). During the 762 infraction hearing, the treatment counselor explained that Plaintiff did not finish treatment. *Id.* Due to the timing of his Brownstone work release discharge, Plaintiff had been advised that he would need to attend further treatment classes following his work release in order to complete treatment. *Id.* Thus, Plaintiff had not completed treatment prior to the time he was discharged from treatment, despite Plaintiff's claim to the contrary.

Plaintiff's other arguments regarding an improper discharge from treatment do not create issues of fact regarding probable cause on the 762 infraction. Plaintiff asserts that CCO Webb violated her duty to report the termination by initiating a "back-dated" termination and asserts Plaintiff's continued incarceration

was improper where he only received loss of good time as the sanction for the 813 and 814 infractions. ECF No. 23 at 6-8; ECF No. 24 at 8, ¶¶54, 57.[3] Neither of these arguments are dispositive to the finding of probable cause. As stated *supra*, Plaintiff had not completed treatment, regardless of the date listed on the discharge paperwork. Second, Plaintiff acknowledges that the 813 and 814 infraction hearing is wholly separate from the 762 infraction hearing: the loss of good time sanction on the 813 and 814 infractions does not preclude a separate punishment for the 762 infraction. *See* ECF No. 23 at 6 ("[I]t is important to distinguish between the different charges and penalties issued to [Plaintiff].").  Therefore, there was probable cause to find Plaintiff guilty of the 762 infraction.

Second, Plaintiff asserts that collateral estoppel establishes that CCO Webb lacked probable cause to revoke Plaintiff's DOSA. ECF No. 23 at 8-10. State law governs the application of collateral estoppel to a state court judgment in a subsequent federal civil rights action. *Ayers v. City of Richmond*, 895 F.2d 1267,

---

[3]   Plaintiff's repeated assertions that the discharge paperwork was "back-dated" is not well taken to the extent it insinuates wrongful conduct. The counselor signed paperwork on June 5, 2017 for conduct that occurred on May 23, 2017, the date at which Plaintiff became noncompliant with DOSA due to incarceration pending disciplinary hearing. ECF No. 21-3 at 7-9.

1270 (9th Cir. 1990) (internal citations omitted). "Generally, collateral estoppel establishes that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *State v. Mullin-Coston*, 152 Wash. 2d 107, 113 (2004) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). The party seeking to establish collateral estoppel must show:

> (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and (4) application of doctrine must not work an injustice.

*State v. Bryant*, 146 Wash. 2d 90, 98-99 (2002) (internal citations omitted). Using these factors, the Court should not apply a "hypertechnical" approach but rather one "with realism and rationality." *State v. Harrison*, 148 Wash. 2d 550, 561 (2003) (quoting *Ashe*, 397 U.S. at 444).

As to the first element, the Court looks to the standard of probable cause at the August 28, 2017 hearing where Plaintiff was found guilty of the 762 infraction, not the later decision finding Plaintiff not guilty. The subsequent December 20, 2018 finding of not guilty was due to a change in DOC standards following the Washington Supreme Court decision in *In Re Schley*, 191 Wash. 2d 278 (2018). ECF No. 21-8 at 3. As to the fourth element, it would work an injustice to bind

the parties to a later finding of not guilty based on subsequent case law and a new standard to base revocations only on treatment related infractions. ECF No. 31 at 4. Therefore, Defendants are not collaterally estopped from arguing that there was probable cause to find Plaintiff guilty of the 762 infraction pursuant to DOC policies existing at that time.

The Court finds that there was probable cause to find Plaintiff guilty on the 762 infraction after he was placed in custody pending the 813 and 814 infraction disciplinary hearing. This is consistent with the hearing officers' finding of probable cause on August 28, 2017. ECF No. 34 (audio hearing). Therefore, summary judgment in favor of the defense is appropriate on Plaintiff's federal and state claims for malicious prosecution and false imprisonment.

### 2. *First Amendment: Retaliation*

Defendants move for summary judgment on Plaintiff's claim for retaliation in violation of the First Amendment on the grounds that Plaintiff lacks competent evidence. ECF No. 17 at 14-15. Plaintiff asserts that he has a viable claim. ECF No. 23 at 13-16.

To establish a claim for First Amendment retaliation, a plaintiff must prove: "(1) it engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor

in the defendant's conduct – i.e., that there was nexus between the defendant's actions and an intent to chill speech. *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). Generally, the plaintiff must also plead and prove a lack of probable cause. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019). However, "a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 1727. Thus, "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.*

Here, Plaintiff asserts that he does not have to establish a lack of probable cause because he received a more severe punishment than: "(1) the punishment given to the person who engaged in the misconduct with him, (2) the punishment imposed by the hearing officer for that misconduct, and (3) the punishment permitted by all applicable rules and policies." ECF No. 23 at 14. The Court will address each argument in turn.

First, Plaintiff distinguishes the punishment given to Plaintiff and Vanessa Orr for the 813 and 814 infractions for walking in an unauthorized area with an unauthorized person. ECF No. 23 at 15. It is undisputed CCO Webb had no influence over Ms. Orr's disciplinary action because Ms. Orr was at a different

work release facility under the supervision of different DOC officers. ECF No. 18 at 6, ¶ 26. It is further undisputed that Ms. Orr was not on a DOSA sentence and not undergoing any mandatory therapy or treatment as part of her sentence. ECF No. 18 at 7, ¶ 35; ECF No. 24 at 11, ¶ 3. Ms. Orr was a first-time offender with no prior infractions and was not subject to special sentencing conditions whereas Plaintiff was a multi-time felon who had previously been in work release, previously committed a similar infraction, and had a classification as high violent. ECF No. 24 at 11, ¶ 3; ECF No. 32 at 2, ¶ 3. Plaintiff has failed to provide objective evidence that demonstrates Plaintiff and Ms. Orr were similarly situated individuals to trigger the exception to the no-probable-cause requirement. *Nieves*, 139 S. Ct. at 1727.

Second, Plaintiff's other arguments are not relevant to the "similarly situated individuals" analysis. ECF No. 23 at 14. Plaintiff's assertion that CCO Webb was required to impose progressive discipline ignores that Plaintiff's separate offenses warranted separate punishments. ECF No. 23 at 5. As stated previously, the 813 and 814 punishment of loss of good time does not preclude incarceration pending the disciplinary hearing nor the punishment for the 762 infraction. Additionally, Plaintiff's assertion that the punishment was more severe than the "punishment permitted by all applicable rules and policies" is not supported by the evidence. It is undisputed that CCO Webb had the authority to recommend placing Plaintiff in

custody pending the disciplinary hearing for the 813 and 814 infractions.  *See* WAC 137-56-170(1).  It is undisputed that CCO Webb was mandated to report Plaintiff's termination from treatment after he became noncompliant with DOSA due to his incarceration. ECF No. 18 at 9-10, ¶¶ 54, 57; ECF No. 32 at 8-9, ¶ 20. Finally, it is undisputed that the DOSA revocation policy at that time dictated: "[i]f the offender is found guilty of failing to complete or being administratively terminated from a substance use disorder treatment program, the offender will be returned to Prison to serve the unexpired term of his/her sentence."  ECF N0. 18 at 10, ¶ 56.  The sanctions imposed on Plaintiff were not contrary to law nor DOSA policy.

Plaintiff fails to create an issue of fact that similarly situated individuals to warrant the exception to the no-probable-cause requirement.  Therefore, Plaintiff must demonstrate a lack of probable cause.  As stated *supra*, probable cause existed to find Plaintiff guilty of the 813, 814, and 762 infractions.  Therefore, summary judgment on Plaintiff's First Amendment retaliation claim is appropriate.

3.  *Qualified Immunity*

Defendants assert CCO Webb is entitled to qualified immunity.  ECF No. 17 at 20.

In evaluating a state actor's assertion of qualified immunity, the Court must determine: (1) whether the facts, viewed in the light most favorable to the plaintiff,

show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right. *See Saucier v. Katz,* 533 U.S. 194, 201-02 (2001) (*overruled in part by Pearson,* 555 U.S. at 227) (holding that courts may exercise sound discretion in deciding which of the two prongs should be addressed first). If the answer to either inquiry is "no," then the defendant is entitled to qualified immunity and may not be held personally liable. *Glenn v. Washington Cty.*, 673 F.3d 864, 870 (9th Cir. 2011) (citing *Pearson*, 555 U.S. at 236).

Here, the Court finds that Plaintiff's § 1983 claims fail because there was probable cause to find Plaintiff guilty on the 813, 814, and 762 infractions. Because CCO Webb's conduct did not violate Plaintiff's constitutional rights, she is entitled to qualified immunity.

## C. Supplemental Jurisdiction

Plaintiff has two remaining state law claims of negligence and intentional infliction of emotional distress. ECF No. 1-1.

Supplemental jurisdiction may be raised by the parties or *sua sponte* by the Court. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 n.3 (9th Cir. 1997) (en banc). A federal court has supplemental jurisdiction over pendent state law claims to the extent they are "so related to claims in the action within [the court's] original

jurisdiction that they form part of the same case or controversy…." 28 U.S.C. § 1367(a). "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (internal citation omitted).

Once the court acquires supplemental jurisdiction over state law claims, the court may decline to exercise jurisdiction under several circumstances, including where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors … will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by statute as stated in Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010). "[D]istrict courts may decline to exercise jurisdiction over supplemental state law claims in the interest of judicial economy, convenience, fairness and comity." *Smith v. Lenches*, 263 F.3d 972, 977 (9th Cir. 2001) (citing *City of Chicago v Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997)).

Here, the Court determined that Defendants are entitled to summary judgment on Plaintiff's federal claims over which the Court had original jurisdiction and some of those state claims for which the Court has supplemental

jurisdiction; this triggers the discretion to decline supplemental jurisdiction on the remaining state claims. *See Acri v. Varian Assocs., Inc.*, 114 F.3d at 1001. In the interest of judicial economy, convenience, fairness and comity, the Court determines that the state law claims based on negligence and intentional infliction of emotion distress would be better addressed in state court. The parties will not be overly inconvenienced where this case is at the summary judgment stage and the parties' completed discovery and briefing can be utilized in state court. For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiff's two remaining state law claims.

### D. Motion to Strike

In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr*, 285 F.3d at 773. "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

An expert witness may express an opinion with respect to an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704(a). However, an expert may not "give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (citation and quotation omitted).

To the extent that Mr. Kautzky's declaration contains legal conclusions, the Court ignores them as impermissible. In any event, Mr. Kautzky's declaration was not dispositive to the merits of Defendants' motion for summary judgment. Therefore, the Court denies the motion to strike as moot.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 17) is **GRANTED in part**. Judgment shall be entered in favor of Defendants on the 42 U.S.C. § 1983 claims for malicious prosecution, false imprisonment, and First Amendment retaliation as well as corresponding state claims for malicious prosecution and false imprisonment.

2. Pursuant to 28 U.S.C. §§ 1367(c)(3) and 1447(c), Plaintiff's remaining two state law claims for negligence and intentional infliction of emotional distress are **REMANDED** to the Spokane County Superior Court for all further proceedings (former Spokane County Superior Court case no. 19-2-04936-32).

3. Defendants' Motion to Strike Declaration of Walter Kautzky (ECF No. 35) is **DENIED as moot**.

4. For good cause shown, Defendants' Motion to Expedite Hearing on Motion to Strike (ECF No. 37) is **GRANTED**.

5. All remaining motions, hearings, and trial are **VACATED as moot**.

The District Court Executive is directed to enter this Order and Judgment for Defendants accordingly, furnish copies to counsel, mail a certified copy of this Order to the Clerk of the Spokane County Superior Court, and **CLOSE** the file.

DATED July 7, 2021.



THOMAS O. RICE
United States District Judge